IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Leon Smalls, | ) | C/A No. 0:08-211-GRA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

This social security matter is before the court for a Report and Recommendation
pursuant to Local Civil Rule 83.VII.02 DSC et seq.  The plaintiff, Leon Smalls ("Smalls"),
brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review
of a final decision of the Commissioner of Social Security ("Commissioner") denying his
claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Smalls applied for SSI and DIB.  His applications were denied initially and on
reconsideration, and he requested a hearing before an administrative law judge ("ALJ").
After a hearing held on September 8, 2005, at which Smalls appeared and testified, the ALJ
issued a decision dated September 16, 2006 denying benefits and finding that Smalls was
not disabled because his medically determinable mental impairments, including depression
and deficits in intellectual functioning, did not meet the requirements of Listing 12.05C, see
20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.05C; (Tr. 23), and did not result in significant
limitations on Smalls's residual functional capacity to perform medium, unskilled work.  (Tr.
23-24.)  The ALJ then found that, under the medical-vocational guidelines ("the Grids")
promulgated by the Commissioner and used as a framework for the decision, Smalls

remains able to perform work found in the national economy given his residual functional capacity, age, education, and work experience.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 203.00, 203.26 (medium, unskilled work); (Tr. 26).

Smalls was forty-six years old at the time of the ALJ's decision.  He completed ninth grade and part of the tenth grade and has past relevant work experience as a furniture refinisher and delivery person.  Smalls alleges disability since August 8, 2003, due to mild facet degenerative arthritic changes in his back (hereinafter referred to as "back problem"), depression, and mental retardation.

In a decision dated September 6, 2006, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.  The claimant has not engaged in substantial gainful activity since August 8, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.  The claimant has the following severe impairments: mild lumbar facet degenerative arthritic changes and deficits in intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR part 404, Subpart. P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, he can stand or walk for six hours of an eight hour workday, he can sit for six hours of an eight hour workday, and he can perform unskilled work activity.

PJG

. . . .

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

7.   The claimant was born on September 1, 1960 and was 42 years old on the alleged disability onset date, which is defined as a younger individual (20 CFR 404.1563 and 416.963).

8.   The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR[1] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

. . . .

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from August 8, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-26.)

The Appeals Council denied Smalls's request for review, making the decision of the ALJ the final action of the Commissioner.  Smalls then filed this action seeking judicial review.

---

[1]Social Security Ruling.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(I), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional



capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996);  see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  Craig, 76 F.3d at 589.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775 (4th Cir. 1973).



**ISSUES**

Smalls raises the following issues for this judicial review:

1.      The Administrative Law Judge (ALJ) erred in finding that Plaintiff suffers from deficits in intellectual functioning rather than mild mental retardation.

2.      The ALJ erred in finding that Plaintiff's deficits in intellectual functioning did not result in the requisite deficits in adaptive functioning initially manifesting in the developmental period.

3.      The ALJ erred in failing to find that Plaintiff's mild mental retardation meets the criteria of Listing 12.05C.

4.      The ALJ erred in relying solely on the medical-vocational rules (grids) to direct the finding that Plaintiff is not disabled, as the record establishes that Plaintiff suffers from non-exertional limitations.

5.      The ALJ's decision is not supported by competent substantial evidence.

(Pl.'s Br., Docket Entry 13 at 1.)

**DISCUSSION**

**A.      Issues Related to Smalls's Alleged Mental Retardation**

If an applicant is not working and has a severe impairment, the Commissioner must proceed to Step 3 of the sequential analysis.  At this step, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled.  The crux of Smalls's first three arguments on appeal is that the ALJ should have found that Smalls suffers from mild mental retardation and meets the criteria of Listing 12.05C.

PJG

### 1.    The Listings Generally

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the listing of that impairment.  20 C.F.R. § 404.1525(d); <u>see</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987) (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition).  The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment.  The Commissioner can also determine that the claimant's impairments are medically equivalent to a listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a listing.  20 C.F.R. § 404.1526(a).  There are three ways to establish medical equivalence:  (1) if the claimant has an impairment found in the Listings but does not exhibit one or more of the findings specified in the particular listing or one of the findings is not as severe as specified in the particular listing, then equivalence will be found if the claimant has "other findings related to that impairment that are at least of equal medical significance to the required criteria"; (2) if the claimant has an impairment not described in the Listings but the findings related to the impairment are at least of equal medical significance to those of a particular listing; or (3) if the claimant has a combination of impairments and no singular impairment meets a particular listing but the findings related to the impairments are at least of equal medical significance to those of a listing.  20 C.F.R. § 404.1526(b).  Finally, a claimant has to establish that there was a "twelve-month period



. . . during which all of the criteria in the Listing of Impairments [were] met." <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 847 (9th Cir. 1991) (finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

### 2.     Listing 12.05C

To meet the criteria of the Listing for mental retardation, a claimant must satisfy two parts of the Listing:  the requirements of the introductory paragraph, and one of four sets of additional criteria indicating the requisite level of severity.

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment *satisfies the diagnostic description in the introductory paragraph **and** any one of the four sets of criteria*, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (2003) (emphasis added); <u>see</u> <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003); <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001); <u>Hodges v. Barnhart</u>, 276 F.3d 1265, 1268 (11th Cir. 2001).

> Section 12.05 states:

> Mental retardation refers to significantly subaverage general intellectual functioning **with** *deficits in adaptive functioning*[2] initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

(emphasis added).

---

[2] <u>See</u> <u>Johnson v. Barnhart</u>, 390 F.3d 1067, 1071 (8th Cir. 2004) (stating that the claimant did not display significant limitations in "adaptive functioning" partly because of his "ability to function despite a possibly limited IQ"); <u>Miles v. Barnhart</u>, 374 F.3d 694, 699 (8th Cir. 2004) (examining the claimant's education and daily activities in evaluating adaptive functioning in an adult mental retardation).

*PJG*

Subsection C of Listing 12.05 additionally requires:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an *additional and significant* work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05 (emphasis added).

In assessing Listing 12.05C, the Commissioner equates the terms "additional and significant" with "severe":

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§ 404.1520(c) and 416.920(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in §§ 404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function[.]"

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00A.

The finding of severity of work-related limitation of function, however, must be exclusive of the mental impairment finding. See Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001) (citing Cook v. Bowen, 797 F.2d 687, 690-91 (8th Cir. 1986), and cases therein). In other words, it must be determined that the claimant's physical impairment[3] imposes significant (i.e. "severe") work-related functional limitations on the claimant's ability to perform basic work activities. The finding of a "severe impairment" at Step 2 of the sequential analysis does not require a finding at Step 3's application of the Listings that the work-related functional limitations from that impairment are also "significant" or "severe." See Griffeth v. Comm'r of Soc. Sec., 217 Fed. Appx. 425 (6th Cir. 2007) (unpublished).

---

[3]In this case, Smalls's only physical/exertional impairment is lumbar facet degenerative arthritis in his back, which the ALJ found caused only "mild functional limitations" in his ability to perform work.



### 3.     Application of Listing Criteria to Smalls

Here, Smalls contends that his low level intellectual functioning, which he characterizes as "mild mental retardation," compels a finding that he meets the requirements of Listing 12.05C. Smalls bases this assertion on his Full Scale IQ score of 66 and his contention that his back problem significantly limits his ability to perform basic work activities. He challenges the ALJ's finding that he did not meet his burden to prove that he suffers from significantly subaverage general intellectual functioning with deficits in his adaptive functioning, both of which were initially manifested in the developmental period, as required by the introductory paragraph of Listing 12.05.

The ALJ's decision shows that she accepted the IQ scores of Dr. Sausser, Smalls's personally retained psychologist, and the evidence regarding Smalls's below-average academic performance represented in portions of his Charleston County school records. (Tr. 23.) However, the ALJ found that those "deficits in intellectual functioning do not result in the *requisite deficits in adaptive functioning* initially manifesting in the developmental period." (Tr. 23) (emphasis added). Thus, while the ALJ implicitly found that Smalls met the first part of the introductory paragraph to Listing 12.05—significantly subaverage general intellectual functioning—she found that he did *not* exhibit the second criterion in the introductory paragraph—the deficits in adaptive functioning. (See Tr. 23.)

The ALJ's finding that Smalls did not meet this element of the introductory paragraph of Listing 12.05 is supported by substantial evidence. In determining the nature and extent of functional limitations allegedly arising out of mental impairments, the Commissioner rates the severity of the condition on the following areas of adaptive functioning: activities of daily living; social functioning; concentration, persistence, or pace; and areas of decompensation.

PJG

20 C.F.R. §§ 404.1520a, 416.920a; <u>see</u> <u>also</u> <u>Battle v. Astrue</u>, 243 Fed. Appx. 514, 520-21 (11th Cir. 2007) (unpublished).

The ALJ found, and the record supports, that Smalls's own testing psychologist's report gave no opinion whatsoever about how Smalls performed (or probably performed) in any of these relevant areas prior to the age of 22.  (Tr. 157.)  The psychologist's only references to adaptive functioning came directly from Smalls's statements to him about Small's then-current, post-injury state of being, not about how he adapted or performed before the age of 22.  (<u>Id.</u>)  Furthermore, the state agency psychological evaluator, Dr. Von, in her Psychiatric Review Technique Report, (Tr. 140-53), did not mention that Smalls had any problems in the relevant functional areas during his childhood or young adulthood.  (Tr. 144.)  Dr. Von did find that, as an adult, he exhibited "mild" functional limitations in three of the four relevant skill areas due to his asserted "depression," (Tr. 143, 150), but she did not state that he had experienced any such limitations prior to his injury at the age of 42. Moreover, Smalls's school records do not show that he experienced problems at home or in public with communication, self-care, or social/interpersonal skills as a young person growing up.  (Tr. 53-66.)  His school records do not disclose disciplinary or other adjustment problems in the classroom or outside of school, (Tr. 60, 63, 64), and his own testimony was that he did "fair" in school, took "regular classes," and that he did not have problems with an ability to work or at home due to mental problems or deficiencies.  (Tr. 185, 190.)  Smalls's Charleston County school records and his own testimony at the hearing show that, despite some indications of low intellectual functioning that required the repetition of the first and seventh grades and "social promotion" to the eighth grade, he otherwise progressed through school (through grade 9) with primarily average to above-average grades and achievement



test scores. (Tr. 55, 58, 63; 185.) Moreover, Smalls himself testified that prior to his back injury he was able to perform significant work between 1990 and 2003, including his last employment requiring skilled work as a furniture refinisher[4] without mental problems relating to his work performance. (Tr. 161-63, 190.) This lack of proof of the required deficits in adaptive functioning during the developmental period is further supported by information contained in Dr. Sausser's report showing that Smalls left school in the tenth grade for financial, not academic or maladjustment, purposes when his father died and Smalls and his brother needed to work to help support the family. (Tr. 154.) There simply is no testimony or evidence anywhere in the record showing that Smalls exhibited problems with taking care of himself, communicating, or getting along with others before the age of 22. Finally, there is no indication in his testimony, his medical records, his school records, or his work records that he ever experienced periods of decompensation.

The evidence that is of record reasonably supports a finding that, despite his admittedly low intellectual functioning in childhood and adulthood, Smalls did not experience any significant deficits in adaptive functioning in the other relevant areas of his life as a child and young adult, i.e., during the developmental period. Although there is some evidence in the record that Smalls performed below average academically in school at times, as he points out in his brief, this evidence applies only to the introductory paragraph of Listing 12.05 requiring "significantly subaverage general intellectual functioning," not to the

---

[4]See Dictionary of Occupational Titles ("DOT"), Occupation No. 763.381-010; SSR00-4p (under the DOT's specific vocational preparation number (7) for furniture refinisher, that occupation is considered "skilled work").



additional requirement of "deficits in adaptive functioning."[5]  Accordingly, based on the testimony and evidence (or lack thereof) discussed above, the ALJ's finding that Smalls's mental condition did not meet the Listing for mental retardation because it does not meet the definition of mental retardation in the introductory paragraph of Listing 12.05C is fully supported by substantial evidence and, therefore, should be affirmed.

As a result, the ALJ was not required to proceed to consider the additional requirements of Listing 12.05.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (under Listing 12.05, claimant must prove both the requisite subaverage intellectual functioning *and* sufficiently serious deficits in adaptive functioning in the developmental period before the other four criteria in the Listing are required to be considered); Markle, 324 F.3d at 187; Foster, 279 F.3d at 354.  Nevertheless, the ALJ did so, implicitly accepting that Smalls's reported full-scale I.Q. score of 66 was valid, but then explicitly finding that the evidence was insufficient to show that Smalls's accepted physical condition or malady—mild lumbar facet arthritic changes in the spine (his back problem)—did not, as also required under the Listing, result in *significant* (i.e., additional and severe) work-related limitation of function.

This conclusion is also supported by substantial evidence.  The record demonstrates that, at most, Smalls was only "mildly" limited in function by his back problem.  (Tr. 24.); see 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00A (the term "significant" used in Listing

---

[5]Even if Smalls had cited to records that would support a contrary finding on the second prong of the introductory paragraph, it is not this court's role to make findings of fact.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  Although this court might have come to a different conclusion, it is not authorized, on review, to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  If, in the face of conflicting evidence, reasonable minds could differ as to whether a claimant is disabled, it is the Commissioner or the ALJ who makes the decision.  See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987).



12.05C is understood as "additional and severe.").  Smalls's own treating physician for his back injury, Dr. Stovall, did not place any restriction on his ability to do work.  (Tr. 100.)  Dr. Stovall noted that the radiological report of Dr. Forsyth, (Tr. 98), found no evidence of severe back injury or problems (stenosis, disc fragment, root compression, etc.).  (Tr. 100.)  Dr. Stovall also stated that Smalls's complaints of pain outweighed any objective findings that would cause such pain (Id.), and treated him only conservatively with medication and physical therapy, (Tr. 92-97, 124-30), which, in fact, Smalls did not even complete.  Smalls was released from physical therapy because he did not show up for over a month of scheduled sessions.  (Tr. 107.)  Smalls himself even testified that he did not fully comply with the physical therapy home exercise instructions.  (Tr. 188.)  The medical records from the physical therapist disclose that Smalls was prescribed a regime of six to eight weeks of twice-a-week therapy sessions, for a total of fourteen to sixteen sessions.  However, Smalls attended only four sessions.  It appears from the record that he simply stopped showing up and was then released by the therapist when he failed to show up without explanation for over one month.  (Tr. 107.)  Smalls did not testify that he failed to complete the prescribed physical therapy session or seek additional treatment for his back due to financial or any other acceptable hardship.[6]  Finally, Smalls's own testimony shows that he is able to do some housekeeping, cooking, and shopping, and that his alleged pain from his back condition is manageable for up to four hours with medication.  (Tr. 189, 192-93.)  The two state agency medical evaluators, Dr. Keller and Dr. Cain, both confirmed the state of Smalls's medical reports and found that he has the residual functional capacity to perform

---

[6]He did, however, testify that he was having some financial difficulty getting "new medications."  (Tr. 189.)



the exertional tasks required to perform medium work. (Tr. 116-23,132-38.) Accordingly, the ALJ acted well within her discretion in partially discrediting Smalls's testimony about his functional limitations and in giving greater credence to the medical reports of his treating physician and the state agency medical evaluators, (Tr. 116-138), to find that he is only "mildly" restricted in his functional ability to perform medium work by his back condition. See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005) (in absence of clear proof of financial hardship, failure to seek treatment is relevant to the credibility determination); see also Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992); Nienhaus v. Massanari, 153 F. Supp. 2d 1274, 1284 (D. Kan. 2001).[7]

As noted above, the ALJ's conclusion at Step 2 that Smalls's back problem was a "severe impairment" did not compel a Step 3 finding that the back problem resulted "in significant work-related limitation of function" as required by Listing 12.05C. See 20 C.F.R., Pt. 404, Subpt. P., App. 1, § 12.05C; (Tr. 23); Griffeth v. Comm'r of Soc. Sec., 217 Fed. Appx. 425 (6th Cir. 2007) (unpublished); Dunn v. Comm'r of Soc. Sec., No. Civ. 07-12748, 2008 WL 5093383, *4 (E.D. Mich. Nov 26, 2008) (quoting Yang v. Comm'r of Soc. Sec., No. 00-10446-BC, 2004 WL 1765480 (E.D. Mich. July 14, 2004) for the proposition that "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other").

Moreover, substantial evidence supports a finding that Smalls was only mildly limited in function by his back problem. (Tr. 24.); see 20 C.F.R. Part 404, Subpart P, App. 1,

---

[7]Social Security Ruling 82-59 requires that "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored," 1975-1982 Soc. Sec. Rep. Serv. at 797, before a claimant's failure to seek treatment can be ignored due to a financial hardship claim.



§ 12.00A (the term "additional and significant" used in Listing 12.05C is understood as "severe."). The ALJ did not err in partially rejecting Smalls's testimony regarding the nature and extent of his physical limitations because she found it to be unsupported by the evidence. See SSR 96-7p, 61 Fed. Reg. 34483-01, 34487 (stating that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed").

    **4.    Conclusion as to Listing 12.05C**

Thus, the ALJ found that Smalls's intellectual functioning did not result in deficits in adaptive functioning manifested during the developmental period. This conclusion is supported by substantial evidence and resulted in the ALJ properly finding that Smalls did not meet the requirements of the introductory paragraph of Listing 12.05. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05. Moreover, the ALJ's finding that Smalls's back problem did not impose an additional and significant work-related limitation of function is similarly supported by substantial evidence, and resulted in a proper finding that Smalls did not meet all of the criteria of Subsection C.

**B.    The Grids**

When the ALJ's sequential evaluation reaches Step 5, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2 (the

"Grids"). <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983). The Grids consist of three "Tables," each representing a different residual functional capacity, including sedentary (Table 1), light (Table 2), and medium work (Table 3). <u>Id.</u> Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." <u>Id.</u>

The Grids consider only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. <u>Walker v. Bowen</u>, 889 F.2d 47, 49 (4th Cir. 1989). "Exertional limitations" exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [his] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b), 416.945a(b). A nonexertional limitation "is a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not, such as mental retardation, mental illness, blindness, deafness or alcoholism" and is "present at all times in a claimant's life, whether during exertion or rest." <u>Gory v. Schweiker</u>, 712 F.2d 929, 930 (4th Cir. 1983); <u>see also</u> 20 C.F.R. §§ 404.1569a(c), 416.945a(c).

When a claimant suffers *solely* from an exertional limitation and his or her situation falls precisely within one of the Grid categories, the Grid is conclusive. 20 C.F.R. §§ 404.1569a(b), 416.945a(b). However, where a claimant suffers from *both* exertional and non-exertional limitations, the Grids may serve as guidelines, but are not determinative. <u>Walker</u>, 889 F.2d at 49 (citing <u>Wilson v. Heckler</u>, 743 F.2d 218 (4th Cir. 1984)); <u>see also</u> 20 C.F.R. §§ 404.1569a(d), 416.969a(d). Further, if the nonexertional limitation rises to the



level that it affects the claimant's residual functional capacity to perform work even though he has the *exertional* capability to perform those jobs, then reliance on the Grids to determine whether the claimant is disabled is precluded. Rather, in those circumstances, the Commissioner has the burden to prove *by expert vocational testimony*—not the Grids—that, despite the claimant's combination of exertional and nonexertional impairments, specific jobs exist in the national economy that the claimant can perform. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983); see also Walker, 889 F.2d at 49.

Smalls contends that the ALJ erred in solely relying on the Grids to determine that he was not disabled. (Pl.'s Br., Docket Entry 13 at 8.) However, this contention inaccurately characterizes the ALJ's conclusion. The ALJ found that Smalls's nonexertional impairments do not result in sufficiently serious functional limitations that restrict his ability to perform work of which he is exertionally capable. (Tr. 26.) The ALJ based this finding on the evidence of Dr. Judith M. Von, (Tr. 140-53), a state agency psychological consultant, and the report of Dr. Gene Sausser, the retained psychologist to whom Smalls was referred by legal counsel. (Tr. 154-57.)

Dr. Von found that any mental impairment resulting from Smalls's alleged "depression" (which was the sole non-exertional impairment in Smalls's claim at the time of her review) resulted in only "mild" limitations in Smalls's activities of daily living, social functioning, and concentration/persistence/pace. Dr. Von also found that Smalls suffered no extended episodes of mental decompensation at work or elsewhere. (Tr. 140, 143, 150.) Dr. Sausser inserted the potential issue of mental retardation and/or deficits in intellectual functioning (apart from depression) into Smalls's claim for the first time. The ALJ's decision to give greater credence to Dr. Von's review of Smalls's functional restrictions



arising from his mental problems than to Dr. Sausser's report is fully supported by the evidence as whole.  See Rogers v. Barnhart, 446 F. Supp. 2d 828 (N.D. Ill. 2006) (stating that an ALJ is not permitted to accept medical evidence if it is refuted by other evidence, which need not itself be medical in nature); see also Stanley v. Barnhart, 116 Fed. Appx. 427, 429 (4th Cir. 2004) (unpublished) (disagreeing with the argument that the ALJ improperly gave more weight to residual functioning capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by those physicians in context of other medical and vocational evidence).  Dr. Sausser's report indicates that his evaluation was conducted on referral by Smalls's attorney "in conjunction with Smalls's application for social security benefits," (Tr. 154), and, although it recites Smalls's subjective complaints, it contains no independent, professional findings that Smalls suffers from any significant limitations in adaptive functioning in any of the recognized areas of activities of daily living, social functioning, and concentration or persistence or pace as a result of his diagnosis of  "mild retardation."  (Id. 154-57).  The ALJ's finding that any functional limitations suffered by Smalls from his mental condition were only "mild" in nature is further supported by Smalls's own testimony that he never had problems understanding how to do his job and never had any kind of mental disturbances while working.  (Tr. 190.)  Furthermore, the record clearly supports the ALJ's additional findings that Smalls is a "younger individual" and that his work record did not show that he had any problems at work in the areas of interpersonal relationships or ability to understand and perform job requirements.

The ALJ properly concluded that Smalls has the residual functional exertional capacity to do medium work by giving at least partial credit to Smalls's subjective complaints



of continuing pain from his back problems and his hearing testimony to the effect that he could lift and carry up to twenty pounds, could stand for at least thirty minutes at a time, and could sit for up to four hours with the assistance of prescribed medication.  Medium Work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds.  "If someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567.  By giving at least partial credit to Dr. Von's opinion that Smalls was experiencing some mental problems (a non-exertional condition), but finding that they only mildly affected Smalls's functional abilities, the ALJ further reduced his residual functional capacity to the full range of medium, *unskilled*, work.  (Tr. 23-24.)   The evidence supports the ALJ's conclusion that Smalls's exertional limitations still allowed him to do medium work and her conclusion that any additional non-exertional functional limitations arising from Smalls's mental problems were only mild in nature.  Accordingly, her use of the Grids at Step 5 as a framework to find Smalls not disabled because there are jobs that he can perform with his limitations which exist in significant numbers in the national economy does not require reversal.  See Hoopai v. Astrue, 499 F.3d 1071, 1076-77 (9th Cir. 2007); Reliford v. Barnhart, 157 Fed. Appx. 194, 195-96 (11th Cir. 2005) (unpublished).

### CONCLUSION

The ALJ's conclusion that Smalls's intellectual functioning did not result in deficits in adaptive functioning during the developmental period is supported by substantial evidence and resulted in the ALJ properly finding that Smalls did not meet the requirements of the introductory paragraph of Listing 12.05.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.  Moreover, the ALJ's finding that Smalls's back problem did not impose an additional

and significant work-related limitation of function is similarly supported by substantial evidence and resulted in a proper finding that Smalls did not meet all of the criteria of Subsection C. The evidence substantially supported the ALJ's conclusions regarding Smalls's residual functional capacity. In light of this finding, the Grids were not conclusive as to the determination of disability, but the ALJ was entitled to rely on them as a guideline. Walker, 889 F.2d at 49. Accordingly, the ALJ properly used the Grids as a framework, though not as the sole basis as Smalls contends, for her decision that Smalls, taking into account both his back and mental problems, can perform the full range of medium, unskilled work.

## RECOMMENDATION

For the foregoing reasons, the court finds that the Commissioner's decision was supported by substantial evidence and reached through application of the correct legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 19, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).